# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

CINDY S. SISNEROS,

       Plaintiff,

v.                                                                           CIV No. 01-277 MV/LFG

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,

       Defendant.

## MAGISTRATE JUDGE'S ANALYSIS AND RECOMMENDED DISPOSITION[1]

      Plaintiff Cindy S. Sisneros ("Sisneros") invokes this Court's jurisdiction under 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security ("Commissioner"). The Commissioner determined that Sisneros was not eligible for supplemental security income ("SSI"). Sisneros moves this Court for an order reversing the Commissioner's final decision and remanding for a rehearing. [Doc. 9.]

      Sisneros was born on August 1, 1957 and was 40 years old when the administrative hearing was held. She has a high school education, and was previously employed as a telephone solicitor in 1983 for a short time. She also held a number of other temporary jobs during 1983, including sorting

---

[1] Within ten (10) days after a party is served with a copy of these findings and recommendations, that party may, pursuant to 28 U.S.C. § 636(b)(1), file written objections to such findings and recommendations. A party must file any objections with the Clerk of the U.S. District Court within the ten-day period allowed if that party wants to have appellate review of the findings and recommendations. If no objections are filed, no appellate review will be allowed.

and hanging clothes at Mervin's and at Goodwill, straightening things at Pic-N-Sav, and child care for friends and family. (Tr. at 55-60.) In mid-October 1996, Sisneros filed an application for SSI, alleging an onset date of February 1, 1995. (Tr. at 89.) Sisneros developed polio when she was about three years old that apparently affected primarily her right lower extremity. She complains she is disabled due to difficulties in walking and pain in her lower back and right lower extremity, including the hip. (Tr. at 100, 135.)

Sisneros's application for benefits was denied at the initial and reconsideration stages, and she sought timely review from an Administrative Law Judge ("ALJ"). An administrative hearing was held on November 25, 1997. In a decision, dated December 24, 1997, the ALJ found that Sisneros was not eligible for benefits. The ALJ concluded that Sisneros "has severe physical impairments." However, her overall condition, including the ability to use her upper extremities and her history of successfully functioning as a single parent for the past eleven years, supported a finding that she retained a residual functional capacity ("RFC") to do a limited range of sedentary work. (Tr. at 18-19.) Sisneros challenged this determination to the Appeals Council which denied her request for review on February 10, 2001.[2] (Tr. at 6-7.) This appeal followed.

---

[2]The Appeals Council considered a number of medical records and letters from Sisneros' attorney that were not before the ALJ. (Tr. at 8-9.) These documents are part of the record and are considered when evaluating whether the Commissioner's decision was supported by substantial evidence. *See* Corber v. Massanari, 2001 WL 1203004 at *1, No. 00-3390 (10th Cir. Oct. 11, 2001) (the record to be considered on review includes all of the evidence that was before the Appeals Council, even if it was not before the ALJ); O'Dell v. Shalala, 44 F.3d 855, 859 (10th Cir. 1994).

**Standards for Determining Disability**

In determining disability, the Commissioner applies a five-step sequential evaluation process.[3] The burden rests upon the claimant to prove disability throughout the first four steps of this process, and if the claimant is successful in sustaining her burden at each step, the burden then shifts to the Commissioner at step five. If, at any step in the process, the Commissioner determines that the claimant is or is not disabled, the evaluation ends.[4]

Briefly, the steps are: at step one, claimant must prove she is not currently engaged in substantial gainful activity;[5] at step two, the claimant must prove her impairment is "severe" in that it "significantly limits [her] physical or mental ability to do basic work activities . . . .,"[6] at step three, the Commissioner must conclude the claimant is disabled if she proves that these impairments meet or are medically equivalent to one of the impairments listed at 20 C.F.R. Part 404, Subpart P, App. 1 (1999);[7] and, at step four, the claimant bears the burden of proving she is incapable of meeting the physical and mental demands of her past relevant work.[8] If the claimant is successful at all four of the preceding steps, the burden shifts to the Commissioner to prove, at step five, that considering

---

[3] 20 C.F.R. § 404.1520(a)-(f) (1999); Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988).

[4] 20 C.F.R. § 404.1520(a)-(f) (1999); Sorenson v. Bowen, 888 F.2d 706, 710 (10th Cir. 1989).

[5] 20 C.F.R. § 404.1520(b) (1999).

[6] 20 C.F.R. § 404.1520(c) (1999).

[7] 20 C.F.R. § 404.1520(d) (1999). If a claimant's impairment meets certain criteria, that means her impairment is "severe enough to prevent [her] from doing any gainful activity." 20 C.F.R. § 416.925 (1999).

[8] 20 C.F.R. § 404.1520(e) (1999).

claimant's RFC,[9] age, education and past work experience, she is capable of performing other work.[10] If the Commissioner proves other work exists which the claimant can perform, the claimant is given the chance to prove she cannot, in fact, perform that work.[11]

**Standard of Review and Allegations of Error**

On appeal, the Court considers whether the Commissioner's final decision is supported by substantial evidence, and whether the Commissioner used the correct legal standards. Glenn v. Shalala, 21 F.3d 983, 984 (10th Cir. 1994). To be substantial, evidence must be relevant and sufficient for a reasonable mind to accept it as adequate to support a conclusion; it must be more than a mere scintilla, but it need not be a preponderance. Trimiar v. Sullivan, 966 F.2d 1326, 1329 (10th Cir. 1992); Muse v. Sullivan, 925 F.2d 785, 789 (5th Cir. 1991). The Court's review of the Commissioner's determination is limited. Hamilton v. Secretary of Health & Human Servs., 961 F.2d 1495, 1497 (10th Cir. 1992). The Court's function is to determine whether the record as a whole contains substantial evidence to support the Commissioner's decision and whether the correct legal standards were applied. Id. at 1497-98. In Clifton v. Chater, the Tenth Circuit described, for purposes of judicial review, what the record should show:

> The record must demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence. Rather, in addition to discussing the evidence supporting his decision, the ALJ must discuss the uncontroverted evidence he

---

[9]One's RFC is "what you can still do despite your limitations." 20 C.F.R. § 404.1545(a). The Commissioner has established RFC categories based on the physical demands of various types of jobs in the national economy. Those categories are: sedentary, light, medium, heavy and very heavy. 20 C.F.R. § 405.1567 (1999).

[10]20 C.F.R. § 404.1520(f) (1999).

[11]Muse v. Sullivan, 925 F.2d 785, 789 (5th Cir. 1991).

4

> chooses not to rely upon, as well as the significantly probative evidence he rejects.

Clifton v. Chater, 79 F.3d 1007, 1009-1010 (10th Cir. 1996) (internal citations omitted). If supported by substantial evidence, the decision of the Commissioner is conclusive and must be affirmed. The Court cannot re-weigh the evidence or substitute its judgment for that of the Commissioner. Hargis v. Sullivan, 945 F.2d 1482, 1486 (10th Cir. 1991).

After carefully evaluating Sisneros's medical records and her testimony, the ALJ appeared to reject Sisneros's claim for benefits at steps four and five. Judge Marion T. Silva concluded both that Sisneros could return to her past relevant job as a telephone solicitor (step four) and that she also could perform other kinds of jobs that exist in the local and national economies (step five). (Tr. at 21.) In reaching this decision, Judge Silva's findings include the following: (1) Sisneros had not engaged in substantial gainful activity after filing her application of SSI; (2) she had "severe" impairments, consisting of right leg atrophy and lower back and hip problems related to her history of polio; (3) Sisneros' impairments or combination of impairments did not meet or equal any of those in the Listing of Impairments; (4) Sisneros' symptom producing medical problems were not credible to establish symptoms or functional limitations to the extent she alleged; (5) her overall condition did not preclude her from performing certain kinds of work at a limited sedentary exertional level; (6) Sisneros retained the RFC to return to her past relevant job as a telephone solicitor; (7) she also could perform other kinds of jobs that exist in the local and national economies, including information clerk and surveillance-system monitor; and (8) Sisneros was not under a disability, as defined by the Social Security Act, at any time through the date of the ALJ's decision. (Tr. at 15-22.)

In this appeal, Sisneros asserts that the case must be reversed and remanded on the following grounds: (1) the ALJ erred in his step three finding that Sisneros' condition did not meet or equal

a listing; (2) the ALJ did not make a proper credibility finding; and (3) the ALJ's RFC finding was not supported by substantial evidence. [Doc. 10.] The Commissioner argues that the ALJ's decision should be affirmed because substantial evidence supports the ALJ's decision and because the decision is a correct application of the regulations. [Doc. 12.]

After a review of the entire record, this Court finds that while substantial evidence may support the finding that Sisneros' medical condition does not meet or equal a Listing, the ALJ failed to adequately discuss the Listings at issue and set forth analysis comparing Sisneros' conditions to those Listings. Without such analysis, this Court has insufficient information to decide whether there was substantial evidence to support the ALJ's finding at step three. The Court recognizes that this is a difficult case and that Sisneros bears the burden of proof to show that her conditions met or equaled the Listings. With that in mind, the Court will remand for a re-hearing and request that the ALJ specifically discuss and analyze the pertinent Listings and whether Sisneros' conditions met those Listings.

## Summary of Sisneros' Medical Conditions and Work History

Sisneros developed polio when she was about three years old. The disease appeared to affect mainly her right lower extremity, although some muscles may have been taken out of her left lower extremity to place in the right. (Tr. at 32.) She had several surgeries when she was young that did not entirely correct her condition. (Tr. at 33, 37.) Her right leg is shorter than the left and she walks with a limp. (Tr. at 40, 48.) She used a brace when she was smaller but had not used any type of assistive device until about three months before the ALJ hearing. (Tr. at 33, 119.) In 1997, she began using a cane and now regularly uses a cane to assist her in ambulation. (Tr. at 46.)

She complains that in addition to having no strength in her right leg, she has pain and cramping in her lower back, trouble with her hands going numb, difficulties in sitting for more than 25-30 minutes, and cannot stand long. (Tr. at 34-36, 44.) She believes her leg is growing weaker over time and that although she has fallen in the past, she is falling more frequently. (Tr. at 35, 40, 171.)

In her application for SSI, filed in October 1996, Sisneros claims an onset date for her disability of February 1, 1995. There are no medical records concerning her condition or complaints between October 19, 1967, when she had an early surgery on her leg (Tr. at 162) and February 1997, when she was examined for purposes of her social security application.[12] (Tr. at 135.)

Dr. G. T. Davis examined Sisneros on February 4, 1997, for purposes of a social security evaluation. (Tr. at 135.) Dr. Davis stated that Sisneros could not walk effectively on her toes or heels because she has no control of her right lower extremity. (Tr. at 136.) An examination of Sisneros' upper extremities showed full range of motion. Hand functions also were noted as normal. (Tr. at 136.) Dr. Davis commented that Sisneros' lower limbs showed atrophy of the right lower extremity and that she has a "flail leg," with complete loss of power in the ankle and toes. With respect to her left extremity, Dr. Davis stated that she had some toe abnormalities on the left foot. (Tr. at 137.) Dr. Davis concluded by finding that the objective medical evidence of her conditions "would limit a number of activities of daily living and work."[13] (Tr. at 137.)

---

[12]Sisneros states that she went to numerous doctors over the years, mostly about her leg, but that she does not recall their names. (Tr. at 101.)

[13]In February 1997, a functional capacity assessment also was performed but it is only partially legible. The examining physician appears to determine that Sisneros has the RFC to perform sedentary or light work but also states that she must use an assistive device for ambulation. (Tr. at 150.)

Beginning in April 1997, Sisneros appeared to obtain consultative examinations from a number of physicians. On April 3, 1997, Dr. Lundblad observed that Sisneros' gait was "markedly abnormal." Sisneros had "ancient scars" in the areas of her right hip, right knee, right foot and left foot." Dr. Lundblad stated that she was "disabled as a result of polio as a child which has left her with a very limited ability to walk. Her ability to sit for prolonged periods is also limited due to her back strain condition which results from her markedly abnormal gait." Sisneros told Dr. Lundblad that she could sit for no more than 30-60 minutes at a time. Dr. Lundblad concluded that "she is clearly disabled from just about any occupation that I can think of." (Tr. at 157.)

On May 14, 1997, Dr. Richard Mannal (Lovelace Orthopedics) examined Sisneros who he stated had "present[ed] for a letter of a disability." (Tr. at 152.) Dr. Mannal observed late effects of polio, including "right extensor power weakness, profound," "right calf muscle weakness, profound," "right foot drop," and "chronic low back pain." Sisneros told Dr. Mannal that her chronic low back pain made it difficult for her to sit more than 30 minutes in the same position. Dr. Mannal concluded that Sisneros was "currently incapable of any job that would require prolonged standing, walking, etc. Whether she could hold an occupation that involved primarily sitting is problematic." Dr. Mannal also commented that she would have difficulty in getting to and from a job even if she could park close. "Under the circumstances I think she probably should be considered permanently and totally disabled." (Tr. at 153.)

On June 27, 1997, Sisneros was examined by Dr. Ellen Marder (Lovelace Neurology). Sisneros told Dr. Marder that her leg was weaker than it had been in the past, that she had difficulties walking and was falling frequently. Dr. Marder's observations of Sisneros were similar to those of Dr. Mannal and Dr. Lundblad. In addition, however, Dr. Marder noted that "[a]lthough [Sisneros']

8

recollection is that the disease affected her right leg exclusively, examination suggests the possibility that she has bilateral involvement of the lower extremities with weakness more prominent on the right than on the left." (Tr. at 158.) Dr. Marder did not comment on Sisneros' ability to work.

Dr. Marder referred Sisneros to Dr. Radecki (Lovelace Spine Clinic) who examined her on September 26, 1997. Dr. Radecki stated that Sisneros was at risk as she ages that the post-polio will make her weaker. He felt that she might need to use a wheelchair in the near future and that eventually she will be wheelchair bound. Dr. Radecki wrote her a separate letter stating that "she is disabled, which I do believe, based on my review of the literature over time, as well as my clinic experience in both polio and post-polio patients." (Tr. at 161.) Dr. Radecki's letter, dated September 24, 1997, states that Sisneros has a "severe disability" and that it will continue to progress as she ages. (Tr. at 160.)

After the ALJ denied Sisneros' claim for SSI benefits, Dr. Radecki again wrote a letter for her describing that Sisneros was "disabled in the legal sense" due to her polio and post-polio syndrome which severely affected her lower extremities. He stated that she had "upper extremity numbness." (Tr. at 166.) This letter was considered by the Appeals Council and is part of the administrative record. In addition, Sisneros submitted a number of other records to the Appeals Council, documenting falls she had taken 1998, 1999 and 2000. (Tr. at 169, 171, 174, 178, 185, 193.) One medical record, dated January 26, 1999, shows that Sisneros requested a wheelchair. (Tr. at 181.) All of these records were presented to and considered by the Appeals Council. (Tr. at 8-9.)

Sisneros has not worked since about 1983. (Tr. at 31.) In 1983, she held a number of temporary positions. She worked at both Mervins and Goodwill for awhile stocking and hanging clothes. She worked for a short time at Pic-N-Sav straightening things, she baby sat for friends and

9

family, and she stripped furniture for her brother. (Tr. at 140.) Sisneros also worked as a telephone solicitor for a dance studio. (Tr. at 31, 60.) She alleges that has not been able to work since 1983 because she was having a difficult time with her leg and she was frequently falling at work. (Tr. at 31-32.) She has been living on welfare since about 1983. (Tr. at 32.)

She is a single parent who is raising two daughters, ages three and eleven. In the Disability Report that Sisneros filled out in October 1996, she states that engages in some home maintenance activities. For example, she cooks two to three times daily and cleans twice a week, although sometimes she needs help cleaning. (Tr. at 113.). She shops once or twice a month and takes care of her children. (Tr. at 103.) She also stated that she visited with her sister, who lives next door, or her mother. Sisneros can drive a car without any type of assistive device although she can only use her left leg and foot. She does not drive frequently. (Tr. at 43, 103, 110.) She can dress herself and take care of her hair. (Tr. at 108.) She can use her hands well and was caring for a 22 month baby when she applied for SSI. (Tr. at 111, 114.) During the hearing, Sisneros testified that she only made very simple meals without assistance and shopped with a wheelchair now. (Tr. at 42, 52.)

Sisneros alleges that she has pain continuously, along with some cramping, throbbing and "stabbing feelings." (Tr. at 113.) However, up until her disability application, she did not take any prescription pain medications because they did not agree with her stomach. (Tr. at 38-39, 114.) It appears that subsequent to the ALJ's decision, she has obtained prescription pain medication.

## Discussion

### A.    *Step Three Analysis:*

"At step three, the ALJ determines whether the claimant's impairment is equivalent to one of a number of listed impairments that the [Commissioner] acknowledges as so severe as to preclude

substantial gainful activity." Drapeau v. Massanari, 255 F.3d 1211, 1212 (10th Cir. 2001) (*quoting* Clifton, 79 F.3d at 1009)). Like the plaintiff in Drapeau, Sisneros claims that she meets the Listing of Impairments because she has "anterior poliomyelitis" or post-polio syndrome. [Doc. 10, at p. 4.] Anterior poliomyelitis is listed at 20 C.F.R. Part 404, Subpart P, App. 1 § 11.11. Drapeau, 255 F.3d at 1212-13. To qualify under this Listing, a claimant must meet one of three conditions: (1) persistent difficulty with swallowing or breathing; (2) unintelligible speech; or (3) disorganization of motor function. Id. at 1213. If a claimant's impairments meet one of these requirements under § 11.11, she satisfies her burden of proving disability, and no further analysis at steps four and five are necessary. Id.

Here, the only question under the § 11.11 Listing is whether Sisneros exhibits "disorganization of motor function." Section 11.004B of the Listing describes disorganization of motor function as:

> Significant and persistent disorganization of motor function in two extremities, resulting in sustained disturbance of gross and dexterous movements, or gait and station (see 11.00C).

Section 11.00C provides:

> Persistent disorganization of motor function in the form of paresis or paralysis, tremor or other involuntary movements, ataxia and sensory disturbances (any or all of which may be due to cerebral, cerebellar, brain stem, spinal cord, or peripheral nerve dysfunction) which occur singly or in various combinations, frequently provides the sole or partial basis for decision in neurological impairment. The assessment of impairment depends on the degree of interference with locomotion and/or interference with the use of fingers, hands and arms.

20 C.F.R. Part 404, Subpart P, Appendix 1, Section 11.00 Neurological. In addition, "Listing 1.00(B) states that an inability to walk on heels and toes, to squat, or to rise from a squatting position

may be considered evidence of significant motor loss." Austin v. Massanari, 162 F. Supp. 2d 517, 526 (W.D. La. 2001).

Some Courts have indicated that the Program Operations Manual System ("POMS") guidelines are helpful in determining whether a claimant meets the Listing for anterior poliomyelitis. Id. at 526 n. 8; List v. Apfel, 169 F.3d 1148, 1150 (8th Cir. 1999); Barron v. Sullivan, 924 F.2d 227, 229-30 (11th Cir.), *reh'g denied*, 933 F.2d 1023 (11th Cir. 1991). Those guidelines provide, in part:

> D. Evaluation
> 1. MEETING OR EQUALING THE LISTING
> The listing criteria for polio (11.11) may be applied both to cases of static polio (where there has been no reported worsening after initial recovery), and cases where late effects of polio [post-polio syndrome] are manifested. Evaluation of the overall impairment severity is the primary consideration. It is possible to meet or equal Listing 11.11 on the basis of the late effects of polio even though medical science has not yet fully defined the etiology of these late effects.
> 2. RESIDUAL FUNCTIONING CAPACITY
> In determining RFC when Listing 11.11 is neither met nor equaled, the guides in DI 24510.000ff. should be followed. Careful consideration should be given to all factors, particularly those factors critical to determining functional status in postpolio cases (see E-H below).

POMS § DI 24580.010.D.

The ALJ, in this case, found that Sisneros has "severe physical impairments" as a result of her polio and that her problems "are somewhat progressive" but concluded that she did not meet or equal the severity of any of the Listings. (Tr. at 15.) In the decision, the ALJ explained that "I have specifically reviewed Sections 1.00 and 11.00 et seq. of the listing-level impairments." (Tr. at 15.) In the administrative hearing, Judge Silva commented that he was going to "go back and look at those [sections 11.11C and 1.09] real carefully." (Tr. at 70.) Notwithstanding the ALJ's indication that he was going to and did review some of the Listing requirements related to post-polio syndrome, the

12

decision is silent as to an actual discussion or analysis of Sisneros' alleged disorganization of motor function, possible evidence of significant motor loss, whether her condition affected two extremities, and the overall impairment severity as discussed in the POMS guidelines. Judge Silva did not provide specific reasons as to why Sisneros failed to meet the criteria of the Listings at issue. Although the ALJ discussed some of the medical evidence in depth, he did not link it to an analysis of the requirements of Listing 11.11.[14]

The Tenth Circuit has held that the simple statement that a claimant does not meet the criteria of any listing is "a bare conclusion [that] is beyond meaningful judicial review." Drapeau, 255 F.3d at 1213 (*citing* Clifton, 79 F.3d at 1009)). Under 42 U.S.C. § 405(b)(1), the ALJ is "required to discuss the evidence and explain why he found that the appellant was not disabled at step three." Clifton, 79 F.3d at 1009. "In the absence of ALJ findings supported by specific weighing of the evidence, we cannot assess whether relevant evidence adequately supports the ALJ's conclusion that appellant's impairments did not meet or equal any Listed Impairment, and whether he applied the correct legal standards to arrive at the conclusion." Id. Again, while Judge Silva did analyze the medical records in some depth, that analysis appears to pertain to his findings at step four and five. The ALJ did not expressly state why Sisneros failed to meet the Listing requirements, nor did he articulate the requirements of § 11.11. Upon remand and rehearing, the ALJ should address the evidence in connection with the relevant § 11.11 criteria and POMS, if helpful or applicable. *See* Thompson v. Sullivan, 908 F.2d 968 (Table, Text in Westlaw), 1990 WL 101554 at *2 (4th Cir. 1990) (remanding because the ALJ did not identify the relevant listed impairments and compare each

---

[14]The Court is aware that the Commissioner provides five pages of analysis regarding the § 11.11 criteria and Sisneros' condition in the response to the motion to reverse and remand. [Doc. 11 at pp. 4-9.] The Commissioner's analysis, however, does not necessarily explain the ALJ's reasoning since ALJ's decision did not compare Sisneros' condition to the criteria.

13

of the listed criteria to the evidence of the claimant's symptoms); Roberts v. Callahan, 971 F. Supp. 498, 501 (D.N.M. 1997) (remanding because the ALJ merely concluded without discussing that the claimant's condition did not meet or equal a listed impairment).

### B. *Credibility Analysis:*

Sisneros also argues that the ALJ committed error in assessing her credibility and in making the RFC finding. Because the Court concludes that this matter should be remanded for a rehearing regarding the step three analysis, it does not reach the merits of Sisneros' arguments that may pertain to steps four and five. Although it appears that the ALJ's credibility findings were properly related to the steps four and five analysis, Sisneros is correct that the credibility findings are found throughout different portions of the ALJ's decision. To the extent that the step three finding is linked to Sisneros' credibility, consideration of credibility at that step would be in error. "The determination of medical equivalency at step three must be based solely on medical evidence." Larson v. Chater, 103 F.3d 144 (Table, Text in Westlaw), 1996 WL 709848 at *1 (10th Cir. Dec. 10, 1996) (*citing* 20 C.F.R. §§ 404.1526(a), 416.926(a)).

Accordingly, for purposes of the re-hearing, the ALJ should not consider matters of credibility at the step three analysis. Moreover, should the ALJ proceed again to steps four and five and make credibility findings that are crucial to its disability determination, the credibility findings should be

"closely and affirmatively linked to substantial evidence."[15] Larson, 1996 WL 709848 at *2 (*citing* Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995)).

    *C.    RFC Finding:*

Sisneros also argues that there was not substantial evidence to support the RFC finding, based on objective medical evidence from a number of examining physicians who found that Sisneros was disabled. The Court does not address the merits of Sisneros' argument at this time. However, for purposes of guidance at the re-hearing, the ALJ should provide specific reasons for disregarding the various medical opinions that Sisneros is disabled.

## Recommended Disposition

That Sisneros' Motion to Reverse and Remand for a Rehearing [Doc. 9] be granted for the reasons stated herein.

*[signature]*
Lorenzo F. Garcia
United States Magistrate Judge

---

[15]In the ALJ decision, Judge Silva stated that he found that Sisneros' testimony and other evidence did not credibly establish the symptoms or functional limitations to the extent alleged. (Tr. at 1-2.) This Court recognizes that credibility determinations are within the province of the ALJ and that claimant's testimony alone, for example, cannot support the existence of disabling pain. The Court agrees that the ALJ properly linked some credibility findings to Sisneros' failure to use pain medication and to the nature of her daily activities, and also finds it troubling that there are no medical records between 1967 and 1997 regarding Sisneros' medical condition. However, the ALJ's decision is not entirely clear as what testimony and "other evidence" Judge Silva found not credible. To the extent that the ALJ concludes Sisneros is not credible based on objective medical evidence discrediting her testimony or discrepancies in the record, that evidence should also be discussed.